[S. F. No. 569.    Department Two.—March 20, 1897.]

IN THE MATTER OF THE ESTATE OF LOUIS J. RUF-
FINO, DECEASED. KATE S. RUFFINO, APPELLANT.

CONTEST OF WILL—MARRIAGE OF PROPONENT WITH DECEDENT—CONTRACT
    AND ASSUMPTION OF MARITAL RELATIONS—IMPROPER INSTRUCTIONS—
    FORMAL DECLARATION OF MARRIAGE.—Upon a contest of a will, where
    issue was joined as to the marriage of the proponent of the will with
    the testator, and the testimony showed a written contract of marriage
    between them, evidencing consent to marriage, but not intended to
    comply with section 76 of the Civil Code, which provides for a formal
    written declaration of marriage before witnesses, and such written con-
    sent was subsequently followed by the open and public assumption of
    marital rights, duties, and obligations, section 76 of the Civil Code has
    no application to the case, nor is the declaration therein provided for
    requisite or material to the validity of the marriage; and an instruction
    based on that section, which would lead the jury to understand that
    where there is no solemnization such declaration must be made or the
    marriage is void, is misleading and erroneous.
ID.—DELAY IN ASSUMPTION OF MARITAL RELATIONS—EVIDENCE OF PRESENT
    CONSENT—PRESUMPTION OF MATRIMONIAL INTERCOURSE—ERRONEOUS
    INSTRUCTIONS.—Where there was evidence tending to prove and the
    jury found that there had been no unlawful relation between the parties

prior to the time when they commenced living together as husband and wife, and it appeared that they always represented that they were married, and were universally so regarded by their acquaintances, their intercourse must be presumed to be matrimonial, notwithstanding a delay of eight months between the written contract of marriage and the assumption of marital relations; and such assumption, when designed to consummate the previous contract at any time thereafter, completes a valid marriage, and proves a present consent thereto which need not be in writing, and of which the former written contract completes the evidence; and it is error to instruct the jury so as to lead them to understand that the assumption of marital rights under a written contract of marriage must be immediate, or within a reasonable time after the contract constituting consent; and to charge them that they are not allowed to presume from the fact that long subsequent to the contract the parties cohabited as husband and wife, that such cohabitation was under a new contract.

ID.—CLAIM OF PROPONENT OF WILL—INSTRUCTION INAPPLICABLE TO EVIDENCE.—Where the evidence showed without controversy that the proponent of the will based her claim of marriage with the testator upon a contract of marriage, followed by a mutual and public assumption of marital rights, duties, and obligations, an instruction that marriage is not proven by the declaration of the woman that it was agreed between her and the man that they were to live together is erroneous, as being inapplicable to the evidence, and an injurious misstatement of the position of the proponent.

ID.—ILLICIT RELATIONS—WILL IN FAVOR OF MISTRESS—UNDUE INFLUENCE —ERRONEOUS INSTRUCTION—"UNLAWFUL" INFLUENCE.—An instruction to the effect that if the proponent of the will was not married to the testator, but had unlawful or illicit relations with him, the law presumes that, if she exercised any influence over him to make a will in her favor, it was an "unlawful influence," and that the law prescribes that no one shall derive profit by reason of any unlawful relations, is misleading and erroneous, there being no issue in the case as to any "unlawful influence" other than undue influence, having the effect of subjecting and controlling the will of the testator; and if the will was the spontaneous act of the testator, and the importunities of a mistress did not overcome the will of the testator, the will is not void, though made in favor of the mistress.

ID.—EVIDENCE—PROPERTY CONVEYED TO TESTATOR BY CONTESTANT.—Upon the question of undue influence of the proponent of the will over the testator, evidence is admissible to show that a portion of the estate willed to her consisted of property conveyed to him by his sisters without consideration, to give him the necessary credit to enable him to carry on his business, and although such evidence would not alone prove undue influence, it would make the will seem more unnatural, and is a proper circumstance to be considered in connection with other facts tending to prove such influence.

ID.—DELUSION—MISTAKE OF TESTATOR AS TO HOSTILITY OF HEIRS—VALIDITY OF WILL.—Where there is neither averment nor proof that the testator had any insane delusion, and the jury found that he was not insane, a finding that he had a delusion as to the hostility to him of his

CXVI. CAL.—20

heirs will be disregarded, as no mere mistake of the testator on such a subject will invalidate a will.

Id.—Evidence against Delusion and Fraud.—Where the allegation is that proponent persuaded testator that his sisters were hostile to him, and that they would expose their relations—the relations existing between the proponent and the testator—and interfere with his property and injure his business, and the evidence shows that the testator had long been very hostile to his sisters, but no other proof appears that he thought his sisters hostile to him, and there is no evidence that proponent spoke an unkind word in regard to them, but proves to the contrary that she always sided with the sisters against their brother, and it appears that all parties believed that the proponent and the testator were married, there being no testimony that the testator thought his sisters intended to expose the relation, or doubted the lawfulness of his marriage, there is no evidence of any insane delusion of the testator as to the hostility of his sisters to him, or of any fraud of the proponent in persuading him of such hostility.

Appeal from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

*George C. Sargent,* and *Sheldon G. Kellogg,* for Appellant.

The evidence as to the indirect conveyance by the testator's sisters of property to the testator to enable him to start in business was clearly irrelevant. (*Ormsby* v. *Webb,* 134 U. S. 65.)   The finding upon the issue as to delusion or illusion is not supported by the evidence as the evidence merely shows that the testator was angry with his sisters, and does not warrant a finding of an insane delusion sufficient to incapacitate the testator from executing a will. (*Estate of Carpenter,* 94 Cal. 406, 417; *Clapp* v. *Fullerton,* 34 N. Y. 190; 90 Am. Dec. 681; *Estate of Spencer,* 96 Cal. 448.)   The instruction to the jury to the effect that if the proponent and testator were not husband and wife then their relations were unlawful, and that the law would presume that if she exercised any influence over him it was an unlawful influence was erroneous. (*Monroe* v. *Barclay,* 17 Ohio St. 304; 93 Am. Dec. 620; *In re Mondorf,* 110 N. Y. 450; *Porschet* v. *Porschet,* 82 Ky. 93; 56 Am. Rep. 880; *Rich-*

*mond's Appeal,* 59 Conn. 226; 21 Am. St. Rep. 85; *In re Hess' Will,* 48 Minn. 504; 31 Am. St. Rep. 565, 667, note; *O'Neall* v. *Farr,* 1 Rich. 80–83; *Farr* v. *Thompson,* 1 Cheves, 37; *Wingrove* v. *Wingrove,* L. R. 11 P. D. 81; *Wainwright's Appeal,* 89 Pa. St. 220; *Johnson's Estate,* 159 Pa. St. 630.) The undue influence must be brought to bear upon the testamentary act, and must amount to coercion. (*Estate of Carpenter, supra; Estate of McDevitt,* 95 Cal. 17; *In re Spencer, supra; In re Carriger,* 104 Cal. 81; *In re Langford,* 108 Cal. 608; *In re Calkins,* 112 Cal. 296.) The evidence shows nothing more than a very affectionate relationship existing between the testator and the proponent, and an opportunity to exert influence if she had so desired; but this is not sufficient to establish that the will was obtained by undue influence. (*In re Hess' Will, supra; Cudney* v. *Cudney,* 68 N. Y. 148, 152; *In re Spratt's Will,* 38 N. Y. Supp. 329, 332; 4 App. Div. (N. Y.) 1; *Estate of Carpenter, supra; Estate of McDevitt, supra; Frost* v. *Dingler,* 118 Pa. St. 259; 4 Am. St. Rep. 593.) The instruction to the jury that they could not presume from the fact that long subsequent to the contract the parties cohabited as husband and wife, that such cohabitation was under a new contract, was erroneous. (See Bishop on Marriage, Divorce, and Separation, secs. 77, 237, 320, 321, 347, 349, 350, 956, 957, 959; *Hynes* v. *McDermott,* 91 N. Y. 451; 43 Am. Rep. 677; *Estate of McCausland,* 52 Cal. 568; *Sharon* v. *Sharon,* 75 Cal. 1; *White* v. *White,* 82 Cal. 427; *Hinckley* v. *Ayres,* 105 Cal. 357.)

*Morris M. Estee, Earll H. Webb,* and *Arthur G. Fisk,* for Respondents.

There was no marriage between the parties, as a contract of marriage is not a contract unless it is immediately followed by the assumption of the marital rights. (*Commonwealth* v. *Stump,* 53 Pa. St. 132; 91 Am. Dec. 198; *Hutchins* v. *Kimwell,* 31 Mich. 130; 18 Am. Rep. 164; Civ. Code, sec. 55; *Sharon* v. *Sharon,* 79 Cal. 669.) A promise to marry in the future is not sufficient, even

though followed by cohabitation. (*Cheney* v. *Arnold*, 15 N. Y. 345; 69 Am. Dec. 609. See *Sharon* v. *Sharon*, *supra*.) The evidence showed, without contradiction, that the testator believed that his sisters were inimical to him, and that he was laboring under an insane delusion as to them. (*Seaman's Friend Soc.* v. *Hopper*, 33 N. Y. 625; *Bitner* v. *Bitner*, 65 Pa. St. 347; *Riggs* v. *American Home Missionary Soc.*, 35 Hun, 659; *Boyd* v. *Eby*, 8 Watts, 66; *Lucas* v. *Parsons*, 24 Ga. 640; 71 Am. Dec. 147; *Stanton* v. *Wetherwax*, 16 Barb. 259.) The instruction of the court as to undue influence was correct. It is presumed that undue influence exists where the relationship is unlawful. (*Taylor* v. *Wilburn*, 20 Mo. 306; 64 Am. Dec. 186; *Main* v. *Ryder*, 84 Pa. St. 217; *Davis* v. *Calvert*, 5 Gill & J. 269; 25 Am. Dec. 288; *Dean* v. *Negley*, 41 Pa. St. 312; 80 Am. Dec. 620; *McClure* v. *McClure*, 86 Tenn. 173; *Kessinger* v. *Kessinger*, 37 Ind. 341; *Reichenbach* v. *Ruddach*, 127 Pa. St. 593; *Saunders' Appeal*, 54 Conn. 108; *In re Bernsee's Will*, 17 N. Y. Supp. 669; *Maddox* v. *Maddox*, 114 Mo. 35; 35 Am. St. Rep. 741; *Gay* v. *Gillilan*, 92 Mo. 250; *Pironi* v. *Corrigan*, 47 N. J. Eq. 135; *Shipman* v. *Furniss*, 69 Ala. 555; 44 Am. Rep. 528; *Leighton* v. *Orr*, 44 Iowa, 679; *Moore* v. *Moore*, 56 Cal. 89; *Moore* v. *Moore*, 81 Cal. 195; *Bayliss* v. *Williams*, 6 Cold. 441; *Rollwagen* v. *Rollwagen*, 63 N. Y. 504; *In re Flint*, 100 Cal. 398; 1 Jarman on Wills, 36.)

TEMPLE, J.—This is the contest of a will. The testator died suddenly, while traveling in the east, June 5, 1895. The proponent, with the exception of two trifling bequests, is the sole beneficiary and appellant. She claims to have been the wife of the testator; but this is denied by the contestants, who claim that the relation between her and the testator was illicit. The contest was tried with the aid of a jury, to whom several questions were propounded, and the verdict was approved by the court, and judgment therein entered for the contestants.

The jury found as follows:

"1. Was the deceased, Louis J. Ruffino, of sound mind at the time of the execution of the alleged will, to wit, on the 5th day of June, 1895? Yes.

"2. Was the said Louis J. Ruffino, when the said instrument of June 5, 1895, was signed by him and the witnesses thereof, and prior and subsequent thereto, laboring under or affected with or by any delusion or illusion as to the members of his own family, and especially as to his sisters, Francisca Ruffino and Fortuna Ruffino, or as to their affection for him or his affection for them? Yes."

After finding facts showing that the will was wholly written and signed by the testator, and also its proper execution as a will duly witnessed, the verdict continues as follows:

"11. Was the said will procured to be made through undue influence exerted upon the said deceased by the proponent, or by any other person, and, if so, by whom? Yes.

"12. Was the said will procured to be made through the fraud or fraudulent representations of the said proponent, or by any other person, and, if so, by whom? No.

"13. Was Louis J. Ruffino married to the proponent? No.

"14. Was a contract of marriage ever entered into between L. J. Ruffino and the proponent? No.

"15. Did unlawful relations exist between Louis J. Ruffino and proponent prior to July, 1884? No."

In the contest it was charged: 1. At the time of the execution of the will deceased was of unsound mind; 2. Deceased had been habitually intemperate, and his reason thereby unseated; 3. The will was not properly executed; 4. The will was executed through the undue influence of proponent, and, under this head, is specified: (a) The proponent cohabited with the deceased for many years, but was not his wife; (b) While so living with him, she poisoned his mind as to con-

testants, who were his sisters, by falsely asserting that they were inimical to him, and they were intent on exposing the relations between deceased and the proponent; that deceased believed these assertions, and was laboring under the delusion that they were true, but they were false; (c) Proponent took advantage of the unlawful relations and the confidence of the deceased, and caused him to make the will in question; (d) Proponent obtained such control over deceased while he was intoxicated as to unduly influence him; (e) Through such false assertions, and by reason of his weak mental condition, deceased was made to believe by proponent that the contestants were attempting to get the control of his property, and injure his business, and deprive him of his property, and by reason of the misrepresentations and fraud the testator was induced to make the alleged will.

All these allegations of fraud and undue influence were denied by the proponent.

The appeal is from an order denying a new trial. Many rulings of the court are objected to, and it is claimed that the evidence was insufficient to sustain the findings which are adverse to the appellant.

The proponent testified that she was married to the testator by contract, and that the contract was in writing, and read as follows: "Dated October 5, 1883. We, the undersigned, hereby agree to be husband and wife. Signed, Louis J. Ruffino, Kate L. Staufer." She also testified that they entered upon the marital relation in July or August, 1884. Upon this subject the court instructed the jury as follows:

"Under our law, marriage is a civil contract, to which there must be the consent of the parties; but consent alone will not constitute a marriage; it must be followed by a solemnization, or by a mutual assumption of marital rights, duties, or obligations. In this case I instruct you there is no evidence tending to show a solemnization.

"Section 76 of the Civil Code prescribes the manner

by written declaration as follows: If no record of the solemnization of a marriage heretofore contracted be known to exist, the parties may join in a written declaration of such marriage, substantially showing: 1. The names, ages, and residences of the parties; 2. The fact of marriage; 3. That no record of such marriage is known to exist. Such declaration must be subscribed by the parties, and attested by at least two witnesses.

"Also section 77 of the Civil Code prescribes that such declaration of marriage must be acknowledged and recorded in like manner as grants of real property.

" The above is the law of this state governing declarations of marriage. The paper testified to by proponent in this controversy is not such a declaration.

" (Sections 68, 69, 70, 75, and 76 were read.)

" The proponent bases her claim of marriage upon an alleged contract of October 5, 1883, claiming it to be a contract *in præsenti*. If you find that such a contract was entered into between the parties at that time, you must also find that they entered into their marital relations, otherwise no marriage takes place. You are not allowed to presume from the fact that long subsequent to said time they lived together that such cohabitation was under a new contract.

" Marriage is not proven by the declaration of the woman that it was agreed between her and the man that they were to live together.

" If the relations between the parties were in the first place illicit, the presumption is that such relations continued, unless satisfactory evidence is produced to show a change from the illicit to the licit or matrimonial relations.

" In this connection I instruct you that the law prescribes that no one shall derive profit by reason of any unlawful relations. The natural and ordinary influence of an unlawful relation is unlawful. You are, therefore, to consider all the circumstances of this case, and if from the testimony you believe that Louis J.

Ruffino and proponent were not husband and wife, then their relations were unlawful, and the law presumes that if she exercised any influence over him it was an unlawful influence."

This instruction was objected to, and I think it was erroneous in several respects: 1. In the first place section 76 of the Civil Code had no real bearing upon any issue in this case. It was not claimed that the document sworn to by proponent was intended to be the declaration provided for in section 76, and no such declaration was required. A jury could only have understood the instruction as meaning that when there is no solemnization this declaration must be made, or the marriage is void. Such is not the law, and the jury must have been misled. There was no occasion for any explanation of section 76, because compliance or non-compliance with it was wholly immaterial.

2. It was also error to tell the jury that they were not allowed to presume from the fact that long subsequent to the contract the parties cohabited as husband and wife, that such cohabitation was under a new contract. There was evidence tending to prove, and the jury found, that there had been no unlawful relation between the parties prior to the alleged assumption of marital rights and duties in 1884. At that time they commenced living together as husband and wife. They always represented that they were married, and were universally so regarded by their acquaintances. Under such circumstances there is a very strong presumption of marriage. Having held themselves out as husband and wife, and having lived together as only married persons could lawfully do, this presumption, which prevails everywhere, of marriage, is especially strong here where marriage may be constituted by consent and subsequent assumption of marital rights and duties, and where such consent and assumption may be manifested in any form, and may be proved under the same general rules of evidence as facts in other

cases. (Civ. Code, sec. 57.) All intercourse in form matrimonial is presumed, until the contrary is shown, to be matrimonial.

But I think there is an implication in this instruction still more injurious to appellant. It is that the assumption of marital rights must be immediate, or, as counsel say, within a reasonable time after the contract constituting consent. There is nothing of the kind in the statute, and no authority for the proposition is cited. Of course there must be a contract for a present marriage. That is, the parties must stipulate that they are now husband and wife, and not that they will at some future day become such. But if at any length of time thereafter they assume the rights and duties of the marital relation, both understanding and intending thereby to consummate the marriage contract, it will be a lawful marriage under the statute. And it is not necessary to hold that consent is manifested only by the former contract. The very assumption of the relation, with the intention of executing such a contract, would of itself constitute the consent which is requisite, and the former contract would tend to characterize the act of the parties in the assumption of the relation, and complete the evidence of a present consent which need not be in writing. Perhaps we cannot go so far under our statute as some of the Scotch authorities, which hold that cohabitation and repute themselves prove a tacit consent which constitutes a lawful marriage, for it may be that evidence would be admissible to show nevertheless that the parties did not intend marriage; that is, that there was no consent to marriage. But where both parties do intend marriage, and assume the rights and duties of the relation in the face of the world, I do not see why it is not a legal marriage. Surely the mere assumption of the rights, duties, and obligations of the marital relation with the intention thereby to be married is as clear an indication of consent as there could be.

The next paragraph in the instruction, that marriage

is not proven by the declaration of the woman that it was agreed between her and the man, that they were to live together, was not justified by any evidence or by the contention of the proponent. The transcript does not show any such evidence, and it is a most injurious misstatement of the position of the proponent. It was a plain intimation that she had no other foundation for her claim of marriage, whereas the evidence shows without controversy that she based her claim upon a contract of marriage, followed by a mutual and public assumption of the rights, duties, and obligations of that relation.

The part of the instruction which has been most discussed by counsel is to the effect that the law prescribes that no one shall profit by an unlawful relation, and that the influence of an unlawful relation is unlawful, and, if the proponent was not married and exercised any influence over the deceased, it was unlawful. Taken by itself this part of the instruction is unintelligible. Taken in connection with the facts of the case, however, it could only mean one thing, to wit: If the proponent was not married to the deceased, and he was induced by the illicit relation to make his will in her favor, it was unlawful and the will void; and, further, if she exercised any influence as to the will, such influence was unlawful and rendered the will void. There was no issue in the case as to any unlawful influence other than undue influence. And in this instruction the phrase seems to be used as though it was something other than undue influence—as though, like an illegal consideration, it rendered void everything that could flow from it, and without reference to the degree of it, or whether it had the effect of subjecting and controlling the will of the testator, or not. And so I have no doubt the jury understood it. While I cannot doubt that the jury must have understood the instruction as above, I do not think the learned trial judge intended to so instruct the jury. The intention undoubtedly was to follow the line of decision commencing with *Dean* v.

*Negley*, 41 Pa. St. 312, 80 Am. Dec. 620. That was a contest of a will, and in that case it appeared that the testator was taken from his family by an adulteress, and when weakened by disease was made to execute a will in favor of the adulteress. The court, after quoting a few Latin maxims, such as *ex turpi causa non oritur actio*, says they may all be summed up in one sentence. "No one shall derive any profit through the law by the influence of an unlawful act or relation." The court then proceeds to say: "The ordinary influence of a lawful relation must be lawful, even where it affects testamentary dispositions, for this is its natural tendency. The natural and ordinary influence of an unlawful relation must be unlawful, in so far as it affects testamentary dispositions favorably to the unlawful relation, and unfavorably to the lawful heirs."

Here, too, the word " unlawful " is used and naturally produces great confusion. But in this opinion the unlawful influence is plainly put upon the same plane as an unlawful consideration, from which no action can arise. Therefore such influence is unlawful, whether it has destroyed the free will of the testator or not. Under this rule there could be no valid bequest to one who has had illicit relations with the testator, if it was induced by the relation. If one had seduced a woman theretofore virtuous, he could neither provide for her or her offspring by his will, for such bequest would be induced by the natural and ordinary influence of the relation, although not by any actual attempt to influence the testator by the beneficiary. The case of *Dean* v. *Negley*, *supra*, has been followed in Ohio, Iowa, and in several cases, but in each case the facts were such as would have warranted a finding of undue influence, as well as of unlawful influence in the sense in which the phrase is used in that case; and certainly if this unlawful influence must be such as has deprived the testator of his free will, there is no room for this strange doctrine. The question, in the absence of

fraud, always is whether the proposed will is the spontaneous act of a competent testator. If not, it makes no difference what the moral qualities of the influence may be which has overcome the will of the testator. If the importunities of a wife have destroyed the free will of a testator, the will is void. If the importunities of a mistress have not overcome the will of a testator, the will is not void, though made in favor of the mistress. Influence which has prevented an unnatural, an unjust, and a vicious will, by overcoming and controlling the testator to the extent that the will is not the spontaneous act of the testator, is unlawful—as much so as the same influence would be if exerted in the opposite direction. The question is as to the effect of the influence upon the testator's mind, not as to its moral character or its source, although in some cases the character of the person exerting the influence may be an important factor in determining its effect.

I do not see how a will can be said to be unnatural which is in favor of a person for whom a sane testator entertained a strong affection. That a will is what would be called undutiful is only material when the circumstances are such as to show that the testator, if uninfluenced, would most likely have made what is called a dutiful will.

The line of authorities alluded to have not been generally followed. The cases upon the subject are collected in a note to the case *In re Hess' Will*, 31 Am. St. Rep. 665, and this opinion need not be extended by a citation and discussion of them. The remark in *In re Flint*, 100 Cal. 391, is *obiter*.

There is no evidence in the record to show of what the estate consisted, or its value, but it seems that a portion of it consisted of property which the testator's sisters, contestants here, conveyed indirectly to him, without consideration, to give him the necessary credit to enable him to carry on business. At the time the conveyance was made there was no understanding as to

a reconveyance. The appellant objected to evidence of these facts as immaterial. I think, however, that the court properly admitted the evidence. If some of the property morally belonged to the contestants, and was really only loaned to their brother through their affection for him, such fact would make the will seem more unnatural, and, although it would not prove undue influence, it would be a proper circumstance to be considered in connection with other facts tending to prove such influence.

Appellant objects to the finding as to delusion, on the ground that the contest does not aver that the testator was subject to any insane delusion, and also on the ground that no insane delusion is found to have existed. I think this contention must be sustained. A mere mistake on such a subject will not invalidate a will. No will would be past attack, if it could be set aside merely upon the testimony of interested parties that the testator believed the heir hostile to him, and that such was not the case. The jury found that the testator was not insane.

There is also no evidence of an insane delusion. The allegation is that proponent persuaded testator that his sisters were hostile to him, and that they would expose their relations—the relations existing between the proponent and the testator—and interfere with his property, and injure his business. The evidence shows that the testator had long been very hostile to his sisters, but beyond that there is no evidence whatever that he thought his sisters hostile to him. It is not shown that proponent ever spoke an unkind word with regard to the sisters, but, to the contrary, that she always sided with the sisters in their controversy with their brother. The contestants themselves seemed to have believed that the proponent and the testator were actually married. There is not a syllable of testimony tending to show that the testator thought they intended to expose the relation, or that he ever doubted that he was lawfully married to the proponent. These facts, how-

ever, would constitute fraud if they existed, and the jury found that there was no fraud.

The order is reversed and the cause remanded.

McFARLAND, J., and HENSHAW, J., concurred.