1. An amendment, to be material within the rule that a demurrer to a pleading does not without more cover the pleading after it has been amended in a material respect, is one that materially aids and strengthens the cause of action or the defense, contained in such pleading.
2. A ground of caveat to an application to probate a will, which avers that the testator was led to believe that the paper signed by him was his will, when in truth it was an entirely different one, of the contents of which he had no knowledge, is good as against a special demurrer, which points out that it is not alleged how or in what manner or by whom he was led to believe that the paper signed by him was his will.
3. There was no error in overruling the demurrers to that ground of caveat, interposed by an heir at law, that the will was executed under a mistake of fact as to the conduct of such heir at law, distinct and definite allegations being set forth therein to show wherein such mistake existed.
4. Nor was there error in overruling demurrers to that ground of caveat which averred that at the time of the execution of the will the testator was under an insane delusion with respect to his daughter, the caveatrix, the particular insane delusion being described and the facts concerning it set out. *Page 130 
5. The demurrer to those portions of the caveatrix's amendment No. 1, which related to representations, devices, and conduct on the part of the testator's wife, and to the fraudulent practices of his wife, and her fraudulent scheme and purpose, should have been sustained, the demurrers pointing out that conclusions only were stated, with no allegation of any accompanying fact to support such conclusions.
(a) The error in refusing to strike such parts of the amendment was not rendered harmless by anything that developed later during the trial.
6. The demurrer to the plea of estoppel filed by the propounders to that ground of the caveat with respect to monomania, which set forth various business dealings between the caveatrix and the testator covering a series of years, certain of them being to the advantage of the caveatrix, and averred that she was therefore estopped from asserting that he was afflicted with monomania, was properly sustained.
7. Whether or not the grounds of the motion for new trial, or any of them, were meritorious, will not be decided, since the error as to rulings on the pleadings, hereinbefore pointed out, rendered the trial before the jury nugatory.
 No. 15060. FEBRUARY 17, 1945. REHEARING DENIED MARCH 7, 1945.
Mrs. Dannie Odom Davis, Fred Raines, and James Spurgeon Davis, the nominated executrix and executors, sought to propound an instrument in writing as the will of Daniel Henderson Davis. Mrs. Ola Davis Aultman, his only child, filed a caveat, the original and the four amendments thereto being as follows:
"At the August term, 1942, of the court of ordinary, comes Mrs. Ola Davis Aultman, an heir at law of said deceased, and enters her caveat to the above-stated petition, and objects to the admission to record of said will, upon the following grounds, to wit:
"1. For that the said Daniel Henderson Davis, at the time of making said pretended will, was not of sound and disposing mind and memory.
"2. For that also, the said Daniel Henderson Davis did not execute the said pretended will freely and voluntarily, but was moved thereto by undue influence and persuasion over him by Mrs. Dannie Odom Davis, his wife, and it is, therefore, not his will.
"3. If by chance the said Daniel Henderson Davis did execute said will, it was because of false representation by the principal legatee therein mentioned.
"4. For that said will was procured by misrepresentation and fraud. *Page 131 
"5. That the said Daniel Henderson Davis was led to believe that the paper signed by him was his will, when, in truth, it was another and an entirely different one, the contents of which he had no knowledge.
"6. For that the said Daniel Henderson Davis was imposed upon by false representations of Mrs. Dannie Odom Davis, the sole legatee in said pretended will, which influenced him to disinherit this caveatrix, his only child.
"7. For that the mind and physical condition of the said Daniel Henderson Davis at the time of executing said will made him exceedingly susceptible and subject to the influence employed by Mrs. Dannie Odom Davis, his wife, to induce him to make a disposition of his property so as to exclude the caveatrix, his only child, and leave all of his property to his wife, the said Mrs. Dannie Odom Davis.
"8. At the time of the making of said purported will, the testator, Daniel Henderson Davis, was afflicted with monomania upon the subject that his only daughter, the caveatrix, was interfering with him and his wife and making scandalous or uncomplimentary remarks about his wife and the testator; and that said monomania influenced the said Daniel Henderson Davis, the testator, in executing the said purported will and in disinheriting his daughter, the caveatrix, which monomania was caused by false and untrue reports made to said testator, and that the said caveatrix denies that any such statements were made by her about said Daniel Henderson Davis, the testator, or his wife.
"9. That said purported will is not the will of Daniel Henderson Davis, because of false reports and rumors brought to him as to the conduct and sayings of his only daughter, the caveatrix; whereas, said rumors and reports were false and maliciously made for the purpose and intent of causing the said Daniel Henderson Davis to disinherit the caveatrix.
"And all this the caveatrix is ready to verify."
First amendment: "1. That on the ____ day of July, 1933, the same being a Saturday, caveatrix, her father, and Dannie Odom Davis went to church, at which time everything seemed most pleasant and cordial and that good feeling and good nature prevailed. Immediately after leaving church, the caveatrix's father and Dannie Odom Davis refused to speak to caveatrix and did not *Page 132 
speak to her until the next Monday following when her father called her into a room and accused her of spreading rumors that she hated him and his wife; that he was very abusive in his language and threatened to strike her and demanded and forced her to leave his home, since which time he has refused to have anything to do with her or to speak to her. That said attitude, disposition, and feeling of her father towards caveatrix was caused by representations, devices, or conduct on the part of the Dannie Odom Davis, his wife, the exact words or conduct used by the said Dannie Odom Davis being unknown to the caveatrix, but caveatrix alleges the purpose and intent of the said Dannie Odom Davis was to estrange or break the relations between her and her father for personal and selfish gain, with the design and purpose of having him to disinherit his daughter, caveatrix, and make her, his wife, the exclusive beneficiary of his estate; that said will was executed as the result of the fraudulent practices of his wife, Dannie Odom Davis, and she thereby accomplished her fraudulent scheme and purpose and caused caveatrix to be disinherited and she to become the sole beneficiary named in the will.
"2. Because the intention and desire of the testator was to leave a life-estate to his wife, Dannie Odom Davis, and [he] so instructed the attorney, Judge R. L. Tipton, who drew up said will, but through error of said attorney said will gave a fee-simple title to Dannie Odom Davis, contrary to the wishes and desire of said testator as he had expressed himself to his attorney, and said will was signed by said testator believing that only a life-estate was left to his wife, Dannie Odom Davis.
"3. That said testator at the time of making said will was 79 years old; was afflicted with cancer which caused him great pain and suffering which affected his mind; that, at the time of making said will, his wife, Dannie Odom Davis, was ____ years old, and was in good and sound health and of strong and convincing mind. The nature and kind of cancer with which the testator was afflicted being cancer of the stomach and pancreas and on the neck. The allegations in this paragraph being made expressly for the purpose in support of the grounds of the caveat and as illustrative of the condition of the testator.
"4. That the testator at the time of the execution of the will, and up to the time of his death, was under the influence of an insane *Page 133 
delusion in relation to the caveatrix, his only daughter, that his daughter hated him and was making scandalous and uncomplimentary remarks against him and was plotting against his life and was threatening to kill him; that said insane delusion had no foundation in fact, but testator was wholly incapable of being reasoned out of said delusion. Under said delusion he was most unnatural, harsh, and offensive towards caveatrix, his only child; that he drove her from his home and refused to speak to her or have anything to do with her, and . . on several occasions tried to bring about financial embarrassment and ruin to caveatrix, and without cause or reason violently abused her and threatened to strike her. That, prior to the marriage of Daniel Henderson Davis to Dannie Odom Davis, the relation between caveatrix and her father was most pleasant, affectionate, and devoted, her father evidencing on every occasion by word and deed the deepest affection, consideration, and love for caveatrix, and she in turn bestowed upon him every consideration and affection a child could bestow upon a parent. The testator was seized with these delusions which sprang from the condition of his mind and these delusions were the inducing cause for the testator excluding caveatrix from participating in his will.
"5. Because the said will was executed by Daniel Henderson Davis under his mistake of fact as to the conduct of caveatrix, his only child, the mistake of fact under which the testator labored and acted when making said alleged will being that he believed that caveatrix had spread false and scandalous rumors about him and his wife and had ceased to love him and hated him, and that she was threatening to take his life and had attempted to do so; that the alleged will was executed as the result of said mistake of fact; whereas, the caveatrix was wholly innocent of said conduct and had made no statements about her father and his wife, and did not hate him but still loved him, had made no threats against his life, nor was she plotting against his life.
"6. Testator intermarried with Miss Dannie Odom, a trained nurse, on May 30, 1933, his second wife who at that time was forty years old. The marriage followed two serious and long periods of illness of testator in the years 1932 and 1933, and his second wife was called in to nurse him during a portion of said periods, and for a part of the time he was not responsible mentally and so recognized *Page 134 
by the attending physician and nurse. As soon as he became convalescent from the second illness, without any courtship, he contracted the secret marriage.
"7. Testator had been a resident of Turner, formerly Worth, County, Georgia, for more than fifty years and had accumulated considerable wealth, approximately $1,000,000. Caveatrix, though married and having a husband and three children, and a home, made her own home with testator since the death of her mother in 1929, and she nursed her mother (testator's wife) for at least two years prior thereto, and her father required close care and nursing on account of his age and weakened physical condition.
"8. Further, testator's habits, social and business relations began to undergo a marked change after the second marriage. The second wife, being without any previous business experience or training, not having owned any property, would assume to take charge of and give directions to his business affairs, would deprive him of the company of his friends; and he came under her complete domination and control, particularly with reference to his feeling towards caveatrix and her three children."
Second amendment: "Now comes caveatrix, with leave of the court first had and obtained, and amends paragraph 4 of her amendment to her caveat, which shall read as follows:
"1. On April 9, 1938, ten days prior to the death of A. J. Davis, Mr. D. H. Davis, president of the Citizens Bank of Ashburn, through his attorney, J. H. Pate, served notice of attorney's fees on caveatrix and A. J. Davis, on a series of notes signed by caveatrix, payable to said bank, in the amount of approximately $33,000, and declined to give caveatrix an opportunity to liquidate said indebtedness, and insisted upon immediate payment, which was done at a great sacrifice by caveatrix.
"2. In 1937, when caveatrix and A. J. Davis were moving their stock of merchandise from Ashburn to Warwick, the said D. H. Davis did stop the truckmen and did refuse to let said goods be removed until all rent claimed by him was paid in full.
"3. In February, 1939, D. H. Davis held the notes of caveatrix in the amount of approximately $15,000, and insisted upon immediate payment, knowing caveatrix had no funds or means of immediately raising same, and compelled caveatrix to turn over to him such property as he might select and choose, at his own *Page 135 
price, which caveatrix by reason of her financial condition was forced and compelled to do to avoid financial ruin.
"4. In 1940, caveatrix and her father, D. H. Davis, owned considerable property jointly; the said D. H. Davis knew of the financial condition of caveatrix and likewise knew that he was amply able to raise all the necessary funds, and insisted that caveatrix make a buy-or-sell proposition, he naming the price, knowing that caveatrix could not raise the money, and thereby obtaining an advantage by purchasing said property far below its value.
"5. In 1941, the Citizens Bank of Ashburn, of which D. H. Davis was president and principal stockholder, and said bank was dominated and controlled by him, did serve upon caveatrix a notice of attorney's fees by reason of a note of approximately $6000 held by said bank against caveatrix. In order to avoid litigation and additional expense and embarrassment, caveatrix was forced to borrow the money to pay off said note."
Third amendment: "1. Mrs. Ola Davis Aultman, caveatrix, admits that the paper propounded and sought to be probated as the will of Daniel Henderson Davis was signed by the said Daniel Henderson Davis when he was prima facie of testamentary capacity, and that, after the said Daniel Henderson Davis signed the same, the three persons, R. H. Johnson, A. R. Smith, and R. L. Tipton, whose names appear on said paper as witnesses, did sign their said names on said paper as witnesses and did witness the signing of the same by Daniel Henderson Davis in the presence of Daniel Henderson Davis and in the presence of each other. Said caveatrix, having admitted a prima facie case, assumes the burden of proving the grounds of her caveat: (a) that said will was procured by fraud; (b) that said will was executed through error, and did not express the wishes or intention of the testator, and was not drafted in accordance with the directions of said testator to his attorney, and therefore in law is not his will; (c) that the said will was executed under a mistake of fact; (d) that, at the time of the execution of said will, the testator was suffering from monomania, all of which grounds are more fully set forth in the caveat as amended."
Fourth amendment: "By striking the words, `threatening to kill him,' in line 6 of paragraph 4 of caveatrix's amendment number one, and substituting in lieu thereof the following, `she and her *Page 136 
son Davis Aultman were threatening his life and wanted to kill him.'"
To the caveat, and to it and the first two amendments, lengthy demurrers, general and special, were filed. These were not renewed after the allowance of the last two amendments. The record does not show that the demurrer to the original caveat was passed upon. The demurrers to the two amendments were overruled.
The propounders demurred to what is known as the caveatrix's first amendment, a portion of said demurrer being as follows: "First. Propounders specially demur to the first two (2) sentences of the first paragraph of said caveat, as amended, which read as follows: "That on the ____ day of July, 1933, the same being Saturday, caveatrix, her father, and Dannie Odom Davis went to church, at which time everything seemed most pleasant and cordial and that good feeling and good nature prevailed. Immediately after leaving church, caveatrix's father and Dannie Odom Davis refused to speak to caveatrix, and did not speak to her until the next Monday morning following when her father called her into a room and accused her of spreading rumors that she hated him and his wife; that he was very abusive in his language and threatened to strike her and demanded and forced her to leave his home, since which time he has refused to have anything to do with her or to speak to her;' for that and because the same are not allegations of an ultimate material fact, or ultimate material facts, such as, in law, would constitute a ground for voiding or setting aside a legally executed will; for that and because the allegations of such two sentences are but an effort to plead the evidence upon [which] an ultimate fact may, or may not, depend; for that and because the allegations of such two sentences are not allegations of ultimate facts; and for that and because a pleader may not, and should not, set forth in his pleadings the evidentiary facts thought to be necessary to sustain the ultimate fact desired to be alleged.
"Second. Propounders specially demur to the third 3d or last sentence of the said first paragraph of said caveat, as amended, which reads as follows: "That said attitude, disposition, and feeling of her father toward caveatrix was caused by representation, devices, or conduct on the part of Dannie Odom Davis, his wife, the exact words or conduct used by the said Dannie Odom Davis *Page 137 
being unknown to the caveatrix; but caveatrix alleges the purpose and intent of the said Dannie Odom Davis was to estrange or break the relations between her and her father for personal and selfish gain, with the design and purpose of having him disinherit his daughter, caveatrix, and make her, his wife, the exclusive beneficiary of his estate; that said will was executed as the result of the fraudulent practices of his wife, Dannie Odom Davis, and she thereby accomplished her fraudulent scheme and purpose, and caused caveatrix to be disinherited and she to become the sole beneficiary named in the will;' for that and because the allegations thereof are but the conclusions of the pleader, without an allegation of substantive facts upon which to base or predicate the same; for that and because `representations, devices, or conduct on the part of Dannie Odom Davis,' as therein referred to, are not described or identified with sufficient certainty, definiteness, and particularity, and the same are too vague and uncertain to put propounders upon proper notice as to what substantive facts caveatrix will seek to prove, or that propounders will have to meet; in that it does not appear therefrom what kind of representation, lawful or unlawful, true or false, or upon what subject, are referred to; in that the devices referred to are not described or identified by such pleadings as being lawful or unlawful, true or false, or the nature or kind of the same made to appear; in that the acts or sayings constituting the conduct referred to are not shown by such pleading; for that and because the acts, sayings, or other things constituting the `fraudulent practices' therein referred to are not made to appear from pleading; for that and because no facts are alleged therein to justify the conclusion of the pleader that the wife of testator indulged in `fraudulent practices'; and for that she entertained a `fraudulent scheme and purpose'; and for that and because the adjectival and adverbial allegations of said sentence are too vague, indefinite, and refer to a time too remote, more than seven (7) years prior to the date of the will, to serve as a well-pleaded cause to void and set aside the will in this case."
The propounders offered what is denominated a plea of estoppel, the nature of which is indicated in the opinion. On objection by the caveatrix, it was stricken. The trial resulted in a verdict in favor of the caveatrix, and a new trial was refused. The propounders assign error on these several rulings. *Page 138 
1. The first assignment of error challenges the correctness of the ruling overruling the demurrers to the caveat as amended. Counsel for the defendant in error take the position that such a question is moot, because thereafter amendments numbers 3 and 4 to the caveat were allowed, and no demurrer was interposed after the allowance of said amendments. Reliance is placed on the principle ruled in Livingston v.Barnett, 193 Ga. 640, 649 (19 S.E.2d 385), that a demurrer to an original petition does not, without more, cover the petition after it has been amended in material respects; but in such case the demurrer should be renewed, if it is still relied on. Whether the rule should be applied here depends upon the question: Were amendments numbered 3 and 4 material amendments? One of them merely admitted a prima facie case for the propounders. It added nothing by way of averment to what was already contained in the amended caveat. The other struck the words, "threatening to kill," occurring in a certain place in a prior amendment, and substituted therefore the words, "she and her son Davis Aultman were threatening his life and wanted to kill him." This was not a material amendment. Compare Gibson v.Thornton, 107 Ga. 545 (2) (33 S.E. 895); Little RockCooperage Co. v. Hodge, 109 Ga. 434 (34 S.E. 667); Kelly
v. Sirouse, 116 Ga. 872 (43 S.E. 280). It did not change the ground of caveat to which it was directed except to alter slightly a statement of fact, the legal effect of the averment being the same with or without the alternation. That the demurrer was not renewed after the last two amendments were allowed, does not make moot the question as to whether the ruling on the demurrers to the caveat was erroneous. The questions raised by the demurrers to the caveat as amended are, therefore, before us for determination.
2. The 5th ground of the original caveat was, "That the said Daniel Henderson Davis was led to believe that the paper signed by him was his will, when, in truth, it was another and entirely different one, the contents of which he had no knowledge." This was demurred to generally and specially. The gravamen of the objection to the probate which is here set forth is that the alleged testator had no knowledge of the contents of the writing he signed. *Page 139 
If that be true, that fact alone would be sufficient to deny probate, no matter how or in what manner or by whom he was led to believe that the paper signed by him was his will. The demurrer to this ground of the caveat was properly overruled. Compare Code, § 113-305.
3. The propounders also demurred generally and specially to that ground of the caveat setting up that the will was executed under a mistake of fact as to the conduct of the caveatrix. The allegations of this ground are as follows: "Because the said will was executed by Daniel Henderson Davis under his mistake of fact as to the conduct of caveatrix, his only child, the mistake of fact under which testator labored and acted when making said alleged will being that he believed that caveatrix had spread false and scandalous rumors about him and his wife and had ceased to love him and hated him, and that she was threatening to take his life and had attempted to do so; that the alleged will was executed as the result of said mistake of fact; whereas, the caveatrix was wholly innocent of said conduct and had made no statements about her father and his wife, and did not hate him but still loved him; had made no threats against his life, nor was she plotting against his life." There were other facts alleged in other paragraphs to which the demurrer was also directed; but we construe these to set forth merely certain facts and circumstances surrounding the case which could be properly set forth for a clearer understanding of the grounds of the caveat actually presented. In 1 Page on Wills, sec. 170, it is said: "A mistake in inducement exists where testator is mistaken as to facts which cause him to draw up and execute the will that he does, where he intends to execute the very instrument that he did, but where he would not have executed such a will with full knowledge of the facts. The general rule is that a will is valid, even though made by reason of a mistake of fact; at least as long as such mistake does not concern the identity of the beneficiaries or of the property of which the will disposes." It has, in the absence of a statute to the contrary, been held uniformly, we believe, that a mistake as to the hostility of the heirs towards the testator, or the reason for which a testator dislikes the natural objects of his bounty, does not render the will invalid. 1 Page on Wills, sec. 171; Kidney's Will, 33 N. B. 9 (a Canada case); Ruffino's Estate, 116 Cal. 304 (48 P. 127); Kimberly's Appeal, *Page 140 68 Conn. 428 (36 A. 847, 37 L.R.A. 261, 57 Am. St. R. 101); Maynardv. Tyler, 168 Mass. 107 (46 N.E. 413); Stewart v. Jordan,50 N.J. Eq. 733 (26 A. 706); Salter v. Ely, 56 N.J. Eq. 357
(39 A. 365); White's Will, 121 N.Y. 406 (24 N.E. 935); Martinv. Thayer, 37 W. Va. 38 (16 S.E. 489); Ross v. Ross,140 Iowa 51 (117 N.W. 1105). In section 173 of the same volume of 1 Page on Wills, the author states that in Georgia, by statute, any mistake of fact on the part of the testator as to the existence or conduct of an heir invalidates a will as far as such heir is concerned. So declares our Code, § 113-210. There was no error in refusing to strike ground 4 of the caveat. Bohler v. Hicks,120 Ga. 800 (3) (48 S.E. 306); Franklin v. Belt, 130 Ga. 37
(4) (60 S.E. 146); Adams v. Cooper, 148 Ga. 339 (2) (96 S.E. 858).
4. The ground of caveat dealing with monomania is as follows: "The testator at the time of the execution of the will, and up to the time of his death, was under the influence of an insane delusion in relation to the caveatrix, his only daughter, that his daughter hated him and was making scandalous and uncomplimentary remarks against him and was plotting against his life, and she and her son, Davis Aultman, were threatening his life and wanted to kill him; that said insane delusion had no foundation in fact, but testator was wholly incapable of being reasoned out of said delusion. Under said delusion he was most unnatural, harsh, and offensive towards caveatrix, his only child; . . he drove her from his home and refused to speak to her or have anything to do with her, and . . on several occasion tried to bring about financial embarrassment and ruin to caveatrix, and without cause or reason violently abused her and threatened to strike her." We are satisfied that the allegations of this ground of the caveat were good as against the demurrers, general and special. Compare Dibble v. Currier, 142 Ga. 855
(83 S.E. 949, Ann. Cas. 1916C, 1); Hall v. Burpee, 176 Ga. 270
(168 S.E. 39).
5. The first amendment to the caveat begins with the statement that caveatrix "amends her caveat so that the same when amended shall read as follows." The preceding statement of facts contains this amendment, and also so much of the propounders' demurrer as attacked a portion of paragraph 1 thereof. That portion of said amendment which charges that "said attitude, disposition, and feeling by her father towards caveatrix was caused by representations, *Page 141 
devices, or conduct on the part of Dannie Odom Davis, his wife, the exact words or conduct used by said Dannie Odom Davis being unknown to the caveatrix;" and that "said will was executed as the result of the fraudulent practices of his wife, Dannie Odom Davis, and she thereby accomplished her fraudulent scheme and purpose and caused caveatrix to be disinherited," was demurred to on the ground that conclusions only were stated, with no accompanying allegations of fact. The contention of the demurrants as to these grounds of the caveat must be sustained. They should have been stricken. Pennington v. Perry,156 Ga. 103 (118 S.E. 710); Jones v. Robinson, 172 Ga. 746
(158 S.E. 752); Peavey v. Crawford, 182 Ga. 782
(187 S.E. 13, 107 A.L.R. 828). But it is argued that the error is harmless, because the judge, while charging the jury fully as to the law governing the other grounds, did not give in charge any law applicable to these particular grounds, and that he thus practically withdrew them from the consideration of the jury. The argument is not convincing. They were not stricken, nor, so far as this record shows, were they formally abandoned, nor so, far as this record shows, were they formally abandoned, these grounds. They remained as a part of the pleadings and were sent out with the jury. In one part of the judge's charge, in referring to the fact that the caveatrix had assumed the burden of proof and admitted a prima facie case, he said: "Prima facie means without anything additional, and she took over what the law says is the burden of proof, that is, to establish by preponderance of the evidence one or more of the grounds of the case." To establish one or more of the grounds of the caveatrix's case could mean nothing more nor less than to establish one or more of the grounds of her caveat as amended. In another part of the charge the judge instructed the jury as follows: "There is the original amendment, marked amendment No. 1. which includes the original petition filed in the court of ordinary, then you will find other amendments made to this paper. There you will have out with you — I believe I have in this collection of papers here the original petition filed in the court of ordinary — all of those papers will be out with you and you have a right to examine them if you see fit to do so." Thus, instead of eliminating from the consideration of the jury these four grounds, he indirectly called their attention *Page 142 
to them. The error, therefore, was not cured or rendered harmless.
6. During the progress of the trial, the propounders tendered their plea of estoppel against said caveatrix, and the same was allowed. Said plea alleged that, by and on account of divers business transactions between the caveatrix and the testator, certain gifts and other considerations were received by the caveatrix, to her advantage and benefit, from the testator, at and during a time when she claimed, under her caveat, that the testator was laboring under a monomania toward and as to her; and the propounders by said plea claimed that the caveatrix was estopped by her said acts from asserting said alleged monomania as a ground of caveat against the will of the testator, she having dealt with him as a sane person and to her advantage and gain during the alleged existence of such alleged monomania. To this plea, the caveatrix filed a demurrer on the ground that such plea did not constitute a defense as a matter of law, the demurrer was sustained, and the plea was disallowed by the court. There was no error in this ruling. While the averments set up in this plea afford facts which, if proved, might be used as admissions against the caveatrix, or to call for explanation on her part, they are not sufficient to operate as an estoppel. For one thing, the test of mental capacity is usually, not what was the condition of the mind over a series of years, but what was it at the moment the testamentary paper was executed. Hillyer v.Ellis, 171 Ga. 300 (155 S.E. 180); Hill v. Deal,185 Ga. 42 (193 S.E. 858); Scott v. Gibson, 194 Ga. 503
(22 S.E.2d 51). There is nothing necessarily inconsistent in having various business dealings with a person on a number of occasions and at different times, and in caveating an application to probate the will on the ground that at the moment the will was executed he was laboring under a delusion as to the conduct of the heir which affected the disposition that he undertook to make of his property. A person may be afflicted with monomania and laboring under a mistake of fact as to the conduct of an heir, and still be legally competent to transact business and to enter into contracts. There is nothing in the case of Hutchins v.
Hutchins, 48 App. D.C. 495, relied on by the plaintiffs in error, to cause us to rule to the contrary, nor does any prior decision of this court cited by counsel constrain us to that end. *Page 143 
7. Whether or not the grounds of the motion for new trial, or any of them, were meritorious, will not be decided, since the error as to rulings on the pleadings, hereinbefore pointed out, rendered the trial before the jury nugatory.
Judgment reversed. All the Justicesconcur.