## WHITFIELD *v.* PITTS.

No. 16607.   MAY 11, 1949.

*Erwin Sibley,* for plaintiff in error.

*Frank O. Evans* and *James M. Watts Jr.,* contra.

DUCKWORTH, Chief Justice. (After stating the foregoing facts.) ■ One of the attacks upon the direction of the verdict here is that there was no sufficient attestation clause and the subscribing witnesses were not able to testify as to the time and place of the execution of the will. "A paper testamentary in its nature does not require for its due execution, an attesting clause declaring it a will, and reciting its execution according to the terms of the statute, pointing out how wills shall be executed. If it be subscribed by the testator, in the presence of the witnesses, and be attested and subscribed by them in his presence, it is sufficient." *Deupree* v. *Deupree,* 45 *Ga.* 414, 416 (2). Redfearn, Wills and Administration of Estates, 100, § 77. The formalities of execution are prescribed by the Code, § 113-301, as follows: "All wills (except nuncupative wills) disposing of realty or personalty shall be in writing, signed by the party making the same or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of the testator by three or more competent witnesses." As ruled in *Webb* v. *Fleming,* 30 *Ga.* 808 (2) (76 Am. D. 675): "It is not necessary that the subscribing witnesses should sign in the presence of each other; it is sufficient if each signs in the presence of the testator." In *Huff* v. *Huff,* 41 *Ga.* 696 (2), it was ruled: "The law provides no special formalities about the witnesses to a will; it is sufficient if they attest and subscribe the will in the presence of the testator; the law implies the request in the consummation of the act, and no special request by the testator is necessary." The will before us bears a signature which all the subscribing witnesses testified was affixed in their presence by Lucy Pitts Whitfield. While two of them could not remember the order in which all signatures were made, each testified that she signed in his presence and that he signed as a witness. Two testified that she signed first. One of them, a county commissioner, testified: "I recall the execution of that instrument. Milton Webb and his wife—Milton wrote the will—brought old lady Lucy up to my house in the car, and we all witnessed her signature on the back porch. She signed the will first, and then we three signed it, that is, Milton Webb, his wife and myself."

Thus the legal formalities of execution are shown to have been fully met.

It is contended that the testatrix did not know the contents of the will. The Code, § 113-305, provides: "In all cases, a knowledge of the contents of the paper by the testator shall be necessary to its validity; but usually, where a testator can read and write, his signature, or the acknowledgment of his signature, shall be sufficient. If, however, the scrivener or his immediate relations are large beneficiaries under the will, greater proof shall be necessary to show a knowledge of the contents by the testator." The greater proof, which is necessary where immediate relations are large beneficiaries, does not require that the evidence shall be conclusive but will be sufficient if strong. *Harris* v. *Harris*, 53 *Ga.* 678, 684 (6). Two of the subscribing witnesses testified that the will was written as directed by the testatrix, and the evidence shows that her wishes were carefully and thoroughly discussed in the process and expressed in the will. As testified by the scrivener, who was one of the witnesses, "I don't recall whether I read the will back to her when I got through writing it, but we talked along and wrote along and read along and discussed it along as she was telling me, because I would kind of say, 'I want to know how to word that.' " There was no evidence that the testatrix did not know the contents of the will, and the above-stated testimony establishes that she did.

It is also contended that the evidence did not demand a finding that the testatrix had sufficient mental capacity to make a will. "A person has testamentary capacity who understands the nature of a testament or will, viz., that it is a disposition of property to take effect after death, and who is capable of remembering generally the property subject to disposition and the persons related to him by the ties of blood and of affection, and also of conceiving and expressing by words, written or spoken, or by signs, or by both, any intelligible scheme of disposition. If the testator has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property, this will suffice." *Slaughter* v. *Heath*, 127 *Ga.* 747 (1) (57 S. E. 69, 27 L. R. A. (N. S.) 1); *May* v. *May,* 175 *Ga.* 693 (2) (165 S. E. 617); *Manley* v. *Combs*, 197 *Ga.* 768, 779 (4) (30 S. E. 2d, 485). The testamentary capacity is to be determined by the condition

of the testator's mind at the time he executed the will. *Martin* v. *Martin,* 185 *Ga.* 349, 352 (195 S. E. 159); *Fehn* v. *Shaw,* 199 *Ga.* 747, 754 (35 S. E. 2d, 253). "Upon the trial of an issue arising upon the propounding of a will and a caveat thereto, the burden, in the first instance, is upon the propounder of the alleged will to make out a prima facie case, by showing the factum of the will, and that at the time of its execution the testator apparently had sufficient mental capacity to make it, and, in making it, acted freely and voluntarily. When this is done, the burden of proof shifts to the caveator." *Slaughter* v. *Heath,* supra; *Spivey* v. *Spivey,* 202 *Ga.* 644, 648 (44 S. E. 2d, 224). This burden was carried by the propounder in producing the testimony of the subscribing witnesses, who had known the testatrix for many years, and who testified that she was apparently sane and capable of executing the will, and that she did so freely and voluntarily. "The opinions of the subscribing witnesses to a will, as to the sanity of the testator, are admissible, without stating the facts upon which they are founded." *Potts* v. *House,* 6 *Ga.* 324 (3) (50 Am. D. 329). To the same effect see *Scott* v. *McKee,* 105 *Ga.* 256 (2) (31 S. E. 183); *Dyar* v. *Dyar,* 161 *Ga.* 615 (2), 619 (131 S. E. 535); *Morgan* v. *Bell,* supra; Redfearn, Wills and Administration of Estates, 65, § 48.

But it is contended by counsel for the plaintiff in error that the testimony of the caveator made a conflict on the question of the testamentary capacity of his wife, and that such issue should have been referred to the jury. The testimony of the caveator has been fully set out in the foregoing statement of facts and goes no further than to show that she would have "brain storms" from time to time, and that they lasted about 15 to 20 minutes, the outbursts being occasioned by his reference to certain deeds in her name and his insistence that his name should have been included also. In reference to such outbursts he testified: "As to my wife's physical and mental condition along in September, 1945, when this instrument was made, she had these brain storms, I call them brain storms, I would not say she was foolish, but I would say she had brain storms, fly off the handle all the time with me. . . I never said she was crazy. She knew what she was doing. I think she knew what

she was doing when she had these brain storms. A whole lot of times I think it was just meanness. She would throw one of these fits to be mean, but she knew what she was doing. . . I don't think she knew what she was doing when she made the will, because we bought together, she should have had my name on the deeds or either given me half of the place and she could have done what she pleased with the other half. If she had had the right sense she would have done that. . . I told you I didn't think she was crazy." If the above-stated testimony does not precisely show testamentary capacity, the most that can be said of it is that it is contradictory, vague, and equivocal. In that event it must be construed most strongly against and unfavorably to the party appearing in his own behalf. *Southern Ry. Co.* v. *Hobbs,* 121 *Ga.* 428 (49 S. E. 294); *Castile* v. *Burton,* 200 *Ga.* 877, 882 (38 S. E. 2d, 919), and cit. So construed, it does not show that the testatrix was lacking in testamentary capacity at the time of the execution of the will. The statement of the caveator that he did not think she had sense enough to make a will is obviously predicated solely on his opinion that such a conclusion must necessarily follow because, not having included his name in the deeds taken in her name, she should have given him "half of the place." To state such a proposition is to state a non sequitur. In any event, the caveator did not pretend to testify as to the condition of his wife's mind at the time of the execution of the will, and testimony as to her mental capacity at other times can not break down the positive testimony of the subscribing witnesses establishing testamentary capacity. *Hillyer* v. *Ellis,* 171 *Ga.* 300 (155 S. E. 180); *Hill* v. *Deal,* 185 *Ga.* 42 (193 S. E. 858); *Davis* v. *Aultman,* 199 *Ga.* 129 (33 S. E. 2d, 317); *Fehn* v. *Shaw,* 199 *Ga.* 747, 754 (35 S. E. 2d, 253).

Nor does the testimony of the caveator show, as contended, that the wife was a monomaniac with respect to the real estate in which he claimed an equity. A showing of hallucinations or insane delusions is essential to proving monomania. *Bohler* v. *Hicks,* 120 *Ga.* 800, 804 (48 S. E. 306); *Dibble* v. *Currier,* 142 *Ga.* 855 (83 S. E. 949, Ann. Cas. 1916C, 1); *Stephens* v. *Bonner,* 174 *Ga.* 128 (162 S. E. 383). Nowhere in the testimony of the

caveator is it claimed that she suffered from any insane delusion about anything at any time.

Nor does the evidence show the exercise of undue influence or any circumstances from which such conduct might reasonably be inferred. . The testimony of the subscribing witnesses establishes conclusively that the will was freely and voluntarily made. The caveator himself testified that "the only ground I have got" was that Reuben Pitts, the brother of the testatrix and a large beneficiary and executor, stated that, in response to the several requests of his sister that he aid her in making a will, he refused to do so because she might think he wanted her to give him something. To say that his statement would authorize a deduction of undue influence on his part would be to indulge a mere suspicion which, of course, can not be done. *Hill* v. *Deal*, 185 *Ga.* 42, 45 (supra). It is also argued that the testimony of the caveator as to the close relationship between the testatrix and her brother, her confidence in him, and her willingness to do what he requested should have required a submission to the jury of the question of undue influence. This testimony shows at most only an opportunity on the part of the brother to impose his wishes upon his sister, and opportunity alone is insufficient to establish undue influence as defined in the Code, § 113-208. *Orr* v. *Blalock*, 195 *Ga.* 863, 866 (25 S. E. 2d, 668); *Norman* v. *Hubbard*, 203 *Ga.* 530 (2) (47 S. E. 2d, 574).

It is earnestly contended that, under the facts shown by the record as to the alleged equity of the husband in the real estate standing in the name of the testatrix, his old age, and lack of funds and income, the will is an unjust and unreasonable one. Nevertheless, a finding is demanded that the testatrix possessed the requisite testamentary capacity in the execution of the will in question, and there being no doubt in this respect, the contention of unreasonableness may not legally be made. *Dyar* v. *Dyar*, 161 *Ga.* 615 (7) (supra); *Ellis* v. *Britt*, 181 *Ga.* 442 (3) (182 S. E. 596); *Shaw* v. *Fehn*, 196 *Ga.* 661, 664 (27 S. E. 2d, 406). It follows from what is said above that the court did not err in directing a verdict for the propounder.

■ After the court had announced its intention to direct, on motion of the propounder, a verdict in favor of the will, but

274

before the verdict had been signed by the jury, the caveator requested that the case be reopened to allow him to be asked the question, "What was the mental condition of your wife on September 1, 1945, as appears to have been the date of this instrument," the court being then and there informed that he would answer as follows: "Her mental condition was the same about which he has testified as being mentally incapacitated, as having brain storms and not being rational when it came to the matter of the question of the real estate and the title to this property." The court refused to reopen the case, and objection is made in an amendment to the motion for new trial, it being contended that the testimony would have contradicted the testimony of the witnesses for the propounder as to the testamentary capacity of the wife, and for various reasons urged and set out in the foregoing statement of facts it is argued that the direction of the verdict was error. No reason is assigned why the caveator could not have been asked the question while on the stand and before both sides had closed, and in such circumstances it rests in the sound discretion of the judge to determine whether he will permit the case to be reopened for the introduction of further evidence. *Bridger* v. *Exchange Bank*, 126 *Ga.* 821 (1) (56 S. E. 97, 8 L. R. A. (N. S.) 463, 115 Am. St. R. 118); *Stewart* v. *Mundy*, 131 *Ga.* 586 (3) (62 S. E. 986). No abuse of discretion is shown, and the court did not err for any reason assigned.

*Judgment affirmed. All the Justices concur.*